## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

_____

| | |
|---|---|
| Meridian Products LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | )    Court No. 13-00246 |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
|_____| ) |

## COMPLAINT

1.     Plaintiff, Meridian Products LLC ("Meridian") by and through its attorneys, alleges herein as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

2.     This action is brought pursuant to 28 U.S.C. §1581(c). Plaintiff contests the U.S. Department of Commerce's ("the Department") final scope determination issued on December June 21, 2013, concerning the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China ("PRC").  See Memorandum to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, through Melissa G. Skinner, Director, Office 8, Operations, from James Terpstra, Senior International Trade Analyst, Regarding Final Scope Ruling on Meridian Kitchen Appliance Door Handles (June 21, 2013) ("Scope Ruling").

### JURISDICTION

3.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1581(c), as this action is commenced under Section 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, *as amended*, 19 U.S.C. §1516a(a)(2)(A)(ii) and (B)(vi).

DCACTIVE-24086202.3

## STANDING

4.      Plaintiff is a U.S. importer of merchandise that the Department has held to be within the scope of the Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 Fed. Reg. 30650 (May 26, 2011) ("Antidumping Duty Order") and the Aluminum Extrusions from the People's Republic of China:  Countervailing Duty Order, 76 Fed. Reg. 30653 (May 26, 2011) ("Countervailing Duty Order") in the Scope Ruling. Therefore, plaintiff is an "interested party" within the meaning of 19 U.S.C. §1516a(f)(3) and 1677(9)(A) and 28 U.S.C. §2631(k)(1).

5.      Plaintiff participated in the administrative proceeding that is the subject of this challenge and accordingly has standing to commence this action pursuant to 28 U.S.C. §2631(c).

## TIMELINESS OF ACTION

6.      Plaintiff commenced this action by filing a Summons on July 10, 2013.   The Scope Ruling was dated June 21, 2013.  The Summons was therefore timely filed pursuant to 19 U.S.C. §1516a(a)(2)(A)(ii) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## FACTUAL HISTORY

7.      On March 31, 2010, the Aluminum Extrusions Fair Trade Committee and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively, "Petitioners") filed a petition with the Department and the United States International Trade Commission ("ITC") alleging that an industry in the United States was materially injured or threatened with material injury by reason of less than fair value and subsidized imports of certain aluminum extrusions from China.

8.      In April 2010, the Department initiated an antidumping duty investigation to

2

determine whether certain aluminum extrusions from the PRC were being, or were likely to be, sold in the United States at less than fair value. Aluminum Extrusions from the People's Republic of China: Initiation of Antidumping Duty Investigation, 75 Fed. Reg. 22109 (April 27, 2010).

9.      In April 2010, the Department initiated a countervailing duty investigation to determine whether certain aluminum extrusions from the PRC received countervailable subsidies. Aluminum Extrusions from the People's Republic of China: Initiation of Countervailing Duty Investigation, 75 Fed. Reg. 22114 (April 27, 2010).

10.     In its Notices of initiation of the antidumping duty investigation and of the countervailing duty investigation, the Department stated that the scope of both of the investigations on aluminum extrusions from the PRC excluded

> finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors, picture frames, and solar panels. The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'kit.' A kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good.

75 Fed. Reg. at 22114, 22118.

In June 2010, the ITC found that there was a reasonable indication that imports of certain aluminum extrusions from the PRC were materially injuring, or threatening material injury to, a U.S. industry. See Certain Aluminum Extrusions From China: Investigation Nos. 701-TA-475 and 731-TA-1177 (Preliminary), USITC Pub. 4153 (June 2010) ("ITC Preliminary Determination").

11.     In April 2011, the Department found that certain aluminum extrusions from the PRC were being, or were likely to be, sold in the United States at less than fair value.

Aluminum Extrusions From the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 76 Fed. Reg. 18524 (April 4, 2011).

12.    In April 2011, the Department issued its final affirmative countervailing duty determination regarding certain aluminum extrusions from the PRC.   Aluminum Extrusions from the People's Republic of China: Final Affirmative Countervailing Duty  Determination, 76 Fed. Reg. 18521 (April 4, 2011).

13.    In May 2011, the ITC notified the Department that imports of certain aluminum extrusions from the PRC were materially injuring a United States industry.   See Certain Aluminum Extrusions from the People's Republic of China: Investigation Nos. 701-TA475 and 731-TA-1177 (Final), USITC Pub. 4229 (May 2011) ("ITC Final  Determination").

14.    On May 26, 2011, the Department issued an antidumping duty order regarding certain aluminum extrusions from the PRC.   Aluminum Extrusions from the People's Republic of China: Antidumping Duty Order, 76 Fed. Reg. 30650 (May 26, 2011) ("Antidumping Duty Order").

15.    On May 26, 2011, the Department issued a countervailing duty order regarding certain aluminum extrusions from the PRC.   Aluminum Extrusions from the People's  Republic of China: Countervailing Duty Order, 76 Fed. Reg. 30653 (May 26, 2011) ("Countervailing Duty Order").

16.    Both the Antidumping Duty Order on certain aluminum extrusions from the PRC and the Countervailing Duty Order on certain aluminum extrusions from the PRC contained the following description of merchandise excluded from the scope of both of these Orders:

> The scope also excludes certain finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with

4

glass pane and backing material, and solar panels.  The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a 'finished goods kit.'  A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further processing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product.  An imported product will not be considered a 'finished goods kit' and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, etc. in the packaging with an aluminum extrusion product.

17.    On January 11, 2013, Meridian requested that the Department confirm that certain completed kitchen appliance door handles ("appliance handles") were outside of the scope of the Antidumping Duty Order and Countervailing Duty Order.  See Letter from Daniel Cannistra, Crowell & Moring LLP, to the Secretary of Commerce, Aluminum Extrusions from the People's Republic of China: Request for Scope Ruling for Kitchen Appliance Door Handles (Jan. 11, 2013) ("Scope Ruling Request").

18.    Appliance handles consist of three different styles of handles which are installed onto the doors of kitchen appliances: Type A handles, Type B handles, and Type C handles.  Type A handles and Type B handles are designed to be installed onto oven doors, and Type C handles are designed to be installed onto freezer doors.  Id. at 1-2.

19.    In its Scope Ruling Request, Meridian provided substantial evidence that that its appliance handles are outside the scope of the Antidumping Duty Order and Countervailing Duty Order because they are "finished goods" that contained, at the time of importation, all of the necessary parts to fully assemble a final finished good and require no further finishing or fabrication, such as cutting or punching, and are assembled "as is" into a finished product.

20.    On June 21, 2013, the Department issued its Final Scope Ruling regarding Meridian's appliance handles.  See Scope Ruling.  The Department determined that Meridian's appliance

handles are within the scope of the Antidumping Duty Order and Countervailing Duty Order because they do not qualify for the exclusion for finished goods.  See Scope Ruling at 15.

## CLAIMS AND BASES FOR RELIEF

### COUNT 1

21.    Paragraphs 1-20 are incorporated here by reference.

22.    The Department failed to consider the criteria listed in 19 C.F.R. §351.225(k)(2) in the Scope Ruling as required under a formal scope inquiry.

23.    The Department initiates a formal scope inquiry when "the issue of whether a product is included within the scope of an order … cannot be determined based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1)."  19 C.F.R. §351.225(e) (2013).   Thus, the Department's initiation of a formal scope inquiry is an admission that the (k)(1) criteria are not dispositive.

24.    When the Department cannot make a scope determination based on the (k)(1) criteria, the Department is required to consider the so-called *Diversified Products* criteria in paragraph (k)(2).  19 C.F.R. §351.225(k)(2) (2012).

> When the [(k)(1)] criteria are not dispositive, the Secretary will further consider:
>
>> (i) the physical characteristics of the product;
>> (ii) the expectations of the ultimate purchasers;
>> (iii) the ultimate use of the product;
>> (iv) the channels of trade in which the product is sold; and
>> (v) the manner in which the product is advertised and displayed.

Id. (emphasis added).   Therefore, when the Department initiates a formal scope inquiry, it is required to consider the (k)(2) criteria.

25.    The Department notified interested parties on February 25, 2013 that it was initiating a formal scope inquiry with respect to appliance handles.  Letter from Melissa G. Skinner,

Director, AD/CVD Operations, Aluminum Extrusions the People's Republic of China: Initiation of Formal Scope Inquiry (Feb. 25, 2013). "The issue of whether the product is included within the scope cannot be determined based solely upon the application. For this reason, and in order to fully consider the comments received, we are initiating a scope inquiry pursuant to 19 CFR 351.225(e)." Id.

26.     Meridian submitted comments that specifically addressed each of the (k)(2) criteria. See Letter from Daniel Cannistra, Crowell & Moring LLP, to the Secretary of Commerce, Aluminum Extrusions from the People's Republic of China: Comment in Response to Formal Scope Inquiry Regarding Kitchen Appliance Door Handles at 9-16 (Mar. 18, 2013).

27.     The Department issued its scope ruling on June 21, 2013, and it admitted that it did not consider the (k)(2) criteria in order to reach its scope determination. Scope Ruling at 12. "Pursuant to 19 CFR 351.225(k)(1), we find that the scope and prior rulings are dispositive as to whether the products at issue are subject merchandise…. [I]t is unnecessary to consider the additional factors specified in 19 CFR 351.225(k)(2)." Id.

28.     The Department therefore admits that it failed to conduct the analysis required when it initiated a formal scope inquiry.

29.     For these reasons, the Department's Scope Ruling declaring that Meridian's appliance handles are not excluded from the scope of the orders was unlawful, was not based upon substantial evidence of record, and was not otherwise in accordance with the law.

30.     Plaintiff requests that this matter be remanded so that the Department may consider the (k)(2) criteria in determining whether Meridian's appliance handles are excluded from the orders as finished goods.

DCACTIVE-24086202.3

<u>COUNT 2</u>

31.     Paragraphs 1-30 are incorporated here by reference.

32.     The Department's scope determination relies on an interpretation of the finished goods exclusion that improperly expands the scope of the orders in a manner that is contrary to its terms to include all products that are comprised entirely of extruded aluminum.

33.     The Department determined that appliance handles are within the scope of the orders because they are comprised completely of aluminum extrusions and therefore cannot qualify for the finished goods exclusion.  Scope Ruling at 14-15.  This is an incorrect reading of the scope description.  The scope language does not address aluminum extrusion content, much less limit the finished exclusion to goods with certain levels of aluminum extrusion content. <u>See</u> 76 Fed. Reg. 30,650, 30,651; 76 Fed. Reg. 30,653, 30,654.  By limiting the finished goods exclusion in this way, the Department's scope ruling expanded the scope of the orders to include items, including Meridian's appliance handles, that are properly excluded from the scope as finished goods.

34.     As Meridian demonstrated in its Scope Ruling Request, its appliance handles are excluded from the scope of the orders because they exactly and completely meet the definition of finished goods.  They contain, at the time of entry, all of the necessary components to assemble a complete handle.  All of the components are fully fabricated and do not require further cutting, punching, or other processing prior to their assembly and installation.  Finally, the handles are assembled "as is" into a finished product—kitchen appliances.

35.     For these reasons, the Department's Scope Ruling declaring that Meridian's appliance handles are not excluded from the scope of the orders was unlawful, was not based upon substantial evidence of record, and was not otherwise in accordance with the law.

DCACTIVE-24086202.3

36.     Plaintiff requests that the Court enter judgment in favor of Plaintiff, declare that the Department erred in its Scope Ruling as alleged herein, and remand this matter to the Department with instructions to exclude Meridian's appliance handles from the scope of the Antidumping Duty Order and Countervailing Duty Order.

DCACTIVE-24086202.3

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court (1) hold that the Department's scope ruling was not lawful, was not based on substantial evidence of record, and otherwise was not in accordance with the law, as alleged herein, and (2) remand this matter to the Department with instructions to either (a) exclude Meridian's appliance handles from the scope of the orders or (b) properly conduct a formal scope inquiry that includes an analysis of the (k)(2) criteria.  Plaintiff also asks that the Court provide such additional relief as it deems just and appropriate.

Respectfully submitted,

/s/ Daniel Cannistra

Daniel Cannistra

**Crowell & Moring LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone (202) 624-2500
Facsimile (202) 628-5116
Attorney for Plaintiff

Dated:  July 10, 2013

DCACTIVE-24086202.3