**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

|  |  |  |
|---|---|---|
| MERIDIAN PRODUCTS LLC, | ) | |
| Plaintiff, | ) | |
| and | ) | |
| WHIRLPOOL CORPORATION, | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | Court No. 13-00246 |
| UNITED STATES, | ) | |
| Defendant, | ) | |
| and | ) | |
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | ) | |
| Defendant-Intervenor. | ) | |

**ORDER**

Upon consideration of the Rule 56.2 Motion of Plaintiff, Meridian Products LLC ("Meridian"), it is hereby

**ORDERED** that the Rule 56.2 motion of Meridian is hereby **GRANTED**, and it is further

**ORDERED** that this action is hereby remanded to the U.S. Department of Commerce for reconsideration of the finished goods scope exclusion of the Orders with regard to Plaintiff's appliance handles.

**SO ORDERED**.

_____
Honorable Timothy C. Stanceu, Judge
U.S. Court of International Trade

Dated  _____, 2014
New York, New York

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

————————————————————————————x
                                                          )
MERIDIAN PRODUCTS LLC,                                     )
                                                          )
                 Plaintiff,                                )
                                                          )
                 and                                       )
                                                          )
WHIRLPOOL CORPORATION,                                     )
                                                          )
                 Plaintiff-Intervenor,                     )
                                                          )
                 v.                                        )          Court No. 13-00246
                                                          )
UNITED STATES,                                             )
                                                          )
                 Defendant,                                )
                                                          )
                 and                                       )
                                                          )
ALUMINUM EXTRUSIONS                                        )
FAIR TRADE COMMITTEE,                                      )
                                                          )
                 Defendant-Intervenor.                     )
                                                          )
————————————————————————————x

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2(a) of the United States Court of International Trade, plaintiff,

Meridian Products, LLC ("Meridian"), moves for judgment in its favor based on the agency

record compiled in the scope proceeding under review.  Plaintiff submits that the U.S.

Department of Commerce determination to include Meridian's appliance handles within the

scope of the antidumping duty order on *Aluminum Extrusions from the People's Republic of*

*China* is unsupported by substantial evidence on the record, or is otherwise not in accordance

with law as set forth in the attached Memorandum in Support of Plaintiff's Motion for Judgment

on the Agency Record.

WHEREFORE, plaintiff respectfully requests that this Court grant its motion and enter an order excluding the subject appliance handles from the scope of the antidumping duty order on aluminum extrusions from China.

Respectfully submitted,

/s/ Daniel Cannistra

Daniel Cannistra
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

*Counsel to* Meridian Products LLC

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE TIMOTHY C. STANCEU, JUDGE**

————————————————————————x
    )
MERIDIAN PRODUCTS LLC,    )
    )
       Plaintiff,    )
    )
       and    )
    )
WHIRLPOOL CORPORATION,    )
    )
       Plaintiff-Intervenor,    )
    )
       v.    )    Court No. 13-00246
    )
UNITED STATES,    )
    )
       Defendant,    )
    )
       and    )
    )
ALUMINUM EXTRUSIONS    )
FAIR TRADE COMMITTEE,    )
    )
       Defendant-Intervenor.    )
    )
————————————————————————x

**MEMORANDUM IN SUPPORT OF MERIDIAN'S**
**MOTION FOR JUDGMENT UPON THE AGENCY RECORD**

Respectfully submitted,

/s/ Daniel Cannistra

Daniel Cannistra
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

*Counsel to* Meridian Products LLC

Dated:  May 12, 2014

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

## TABLE OF AUTHORITIES

**Cases**

*Meridian v. United States*, Court No. 13-00018 (Ct. Int'l Trade filed Jan. 10, 2013) ................. 16

*Plasticoid Manufacturing Inc. v. United States*, Court No. 12-00407 (Ct. Int'l Trade filed Dec. 11, 2012) ....................................................................................................... 16

*Walgreen Co. v. United States*, 620 F.3d 1350 (Fed. Cir. 2010) .................................... 11

**8**

*Aluminum Extrusions From the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value, and Preliminary Determination of Targeted Dumping*, 75 FR 69403 (November 12, 2010) ................................................................ 14

Final Results of Redetermination Pursuant to Court Remand, *Rowley Co. v. United States*, No. 12-00055 (Ct. Int'l Trade Feb. 28, 2013)................................................. 16

Final Results of Redetermination Pursuant to Court Remand, *Valeo, Inc. v. United States*, No. 12-00381 at 10 (Ct. Int'l Trade May 14, 2013) ...................................... 16

*Final Scope Ruling on American Fence Manufacturing Company LLC's Fence Sections, Posts and Gates* (Dec. 2, 2011) ............................................................... 18

*Final Scope Ruling on Banner Stands and Back Wall Kits* (Oct. 31, 2012)................................. 17

*Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems* (Oct. 31, 2012) .................................................................................. 17

*Final Scope Ruling on Cutting and Marking Edges*, A-570-967, C-570-968, dated Nov. 13, 2012 .................................................................................................. 15

*Final Scope Ruling on J.A. Hancock Co., Inc.'s Geodesic Structures*, A-570-967, C-570-968, dated July 17, 2012 ............................................................. 15, 16

*Final Scope Ruling on Refrigerator/Freezer Trim Kits*, A-570-967, C-570-968, dated Dec. 17, 2012) ................................................................................. 15

*Preliminary Determinations: Comments on the Scope of the Investigations*, dated October 27, 2010 ...................................................................................... 14

*Preliminary Scope Ruling on Side Mount Valve Controls*, A-570-967, C-570-968, dated Sep. 24, 2012, *aff'd*, *Final Scope Ruling on Side Mount Valve Controls*, A-570-967, C-570-968, dated Oct. 26, 2012.................................................... 7

No table of authorities entries found.

## STATEMENT REQUIRED BY USCIT RULE 56.2

A.     **The Administrative Determination Under Review**

In this appeal Plaintiff Meridian Products LLC ("Meridian") challenges the Department of Commerce's ("Commerce") final scope ruling on Meridian's kitchen appliance door handles ("appliance handles").  *See Final Scope Ruling on Meridian Kitchen Appliance Door Handles*, A-570-967, C-570-968, dated June 21, 2013 ("Appliance Handles Scope Ruling").  In its ruling, Commerce determined that Meridian's appliance handles were within the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China ("PRC") because they do not meet the exclusion for "finished goods."  *Id*. at 15.

B.     **Issues of Law Presented**

1.     **Did Commerce's Appliance Handles Scope Ruling erroneously interpret the scope of the AD/CVD orders to include merchandise not included in the orders?**

**ANSWER**:  Yes. Commerce's determination that Meridian's appliance handles were within the scope of the AD/CVD orders on aluminum extrusions from China impermissibly expanded the scope of the orders by interpreting the scope language in a manner inconsistent with its terms and inconsistent with Commerce's previous scope rulings, and therefore Commerce's determination was not supported by substantial evidence and not in accordance with law.

## STATEMENT OF FACTS

On May 26, 2011, the U.S. Department of Commerce ("Commerce") published AD/CVD orders covering aluminum extrusions from China.  *See Antidumping Duty Order on Aluminum Extrusions from the People's Republic of China*, 76 Fed. Reg. 30650 (May 26, 2011) ("Antidumping Duty Order"); *Countervailing Duty Order on Aluminum Extrusions from the*

*People's Republic of China*, 76 Fed. Reg. 30653 (May 26, 2011) ("Countervailing Duty Order")

(collectively the "Orders").

Meridian's appliance handles are kitchen appliance door handles for ovens, refrigerators,

or freezers.  The kitchen appliance door handles consist of three different types of handles.  The

products are classified under subheading 8418.99.8060 of the Harmonized Tariff Schedule of the

United States.  Type A handles are for attachment to oven doors.  They are made of aluminum

extrusions which are brushed and anodized and have holes drilled in the handles.  Type B

handles are for attachment to oven doors.  The handles are made of aluminum extrusions, plus

two plastic injection molded end caps (one at each end) which are used to fasten the handle to the

door.  Holes are drilled in the handles.  Type C handles are for attachment to freezer doors.  They

are made of aluminum extrusions and are included in a kit with an allen wrench and installation

instructions.  Holes are drilled in the handles.

Meridian submitted a request for a scope inquiry on January 11, 2013.  *See* Scope Ruling

Request of Meridian (January 11, 2013) ("Scope Request").  In its Scope Request, Meridian

argued that the appliance handles should be excluded from the scope of the orders as "finished

goods kits."  Meridian noted that: (1) the appliance handles are a packaged combination of parts

that contain, at the time of importation, all of the necessary components to assemble a complete

handle to be mounted to an oven, refrigerator, or freezer; (2) all of the components are fully

fabricated and do not require further cutting, punching, or other processing prior to their

assembly and installation; and (3) the handles are assembled "as is" and are in a form ready to be

sold directly to, and used by, the consumer/end user.  Meridian further noted that its products

meet the definition of Commerce's "new test" for finished goods kits as established in the Side

Mount Control Valves Scope Ruling.

On February 25, 2013 Commerce initiated a formal scope inquiry, explaining in its notice of this initiation that "{t}he issue of whether the product is included within the scope {of the Antidumping Duty Order and the Countervailing Duty Order} cannot be determined based solely on the application," and so it was "initiating a scope inquiry pursuant to 19 CFR 351.225(e)." Thereafter Meridian Products and other parties filed scope comments.

On June 21, 2013, Commerce issued its Appliance Handles Scope Ruling in response to Meridian's Scope Request.  In the Scope Ruling, Commerce found that "the scope and prior rulings are dispositive,"so that it was "unnecessary to consider the additional factors specified in 19 CFR 351.225(k)(2),"and that Meridian's appliance handles "are within the scope of the Orders."  Appliance Handles Scope Ruling at 12, 15.  Specifically, Commerce found that Meridian's products met the description of the subject extrusions and that the scope expressly includes aluminum extrusions which are identified by reference to their end use.  *Id*. at 12 Commerce also determined that the exclusion for "finished goods kits" in the Orders did not apply, on the ground that the appliance handles "do not include non-aluminum extrusion components and are not intended to display customizable materials." *Id*. at 14.  Further, Commerce refused to apply the revised test it had articulated in the Side Mount Valve Control Scope Ruling on the ground that Meridian's products do not contain non-aluminum extrusion components as was the case in that Ruling.  *Id*. at 14.

## STANDARD OF REVIEW

When reviewing a scope determination, the Court will overturn "any determination, finding or conclusion found" by Commerce where "unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed.Cir.1996)(quoting 19 U.S.C. § 1516a(b)(1)(B)).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Consolo v. Fed. Mar.Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)
(quotations and citation omitted).  In determining whether substantial evidence exists, "[the
court] review[s] the records in its entirety, including all evidence that 'fairly detracts from the
substantiality of the evidence.'"  *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269
(Fed.Cir. 2005) (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).
Although Commerce is granted deference in the interpretation of its own orders, "Commerce
cannot 'interpret' an antidumping order so as to change the scope of that order, nor can
Commerce interpret an order in a manner contrary to its terms."  *Eckstrom Indus., Inc. v. United
States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001).  As a result, Commerce may interpret scope orders
to include subject merchandise "only if they contain language that specifically includes the
subject merchandise or may be reasonable interpreted to include it."  *Allegheny Bradford Corp.
v. United States*, 28 CIT 830, 843 n. 6, 342 F. Supp.2d 1172, 1184 n. 6 (2004).

## ARGUMENT

Commerce's shifting scope determinations have made it impossible for interested parties
to ascertain which products fall within the scope of the orders.  Commerce has received seventy
one scope ruling requests and it has issued thirty eight scope rulings to date.  *See* Appendix A.
Further adding to the confusion, in the present case Commerce has asserted a major change to
the finished goods exclusion, a limitation on the exclusion based on aluminum extrusion content,
and it is not applying this change in its analysis uniformly.  In doing so, Commerce unreasonably
expanded the scope of the order to include Meridian's appliance handles.

A.    **Commerce Failed to Consider the Criteria Listed in 19 C.F.R. § 351.225(k)(2) in the Scope Ruling, as Required Once Commerce Initiates A Formal Scope Inquiry as it Did in This Case**

Commerce expressly declined to consider the criteria listed in 19 C.F.R. § 351.225(k)(2) as is required after Commerce initiates a formal scope inquiry as it did in this case.  Therefore its scope ruling declaring Meridian's appliance handles within the scope of the orders was unlawful, was not based upon substantial evidence, and was not otherwise in accordance with the law. The United States Court of Appeals for the Federal Circuit has expressly acknowledged this requirement stating that,

> [i]f Commerce determines that the application for a scope ruling and the criteria in 19 C.F.R. § 351.225(k)(1) ("(k)(1) criteria") are sufficient to determine whether the products fall within the scope of the final antidumping order, Commerce issues a final scope ruling. *Id.* § 351.225(d).  If not, <u>Commerce initiates a scope inquiry to consider the criteria enumerated in § 351.225(k)(2) ("(k)(2) criteria")</u>, which then results in a final scope ruling. *Id.* § 351.225(e).

*Walgreen Co. v. United States*, 620 F.3d 1350, 1352 (Fed. Cir. 2010) (emphasis added).  Thus, the purpose of a scope inquiry is to consider the (k)(2) criteria.  This conclusion is also clear from the applicable Commerce regulations.  These regulations provide that a formal scope inquiry is warranted where Commerce is unable to determine whether a product is included within the scope of an order, "based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1)."  19 C.F.R. § 351.225(e) (2013).  Accordingly, the initiation of a formal scope inquiry reflects a judgment that the (k)(1) criteria are not dispositive. The regulations further state that when the (k)(1) criteria are not dispositive, Commerce <u>must</u> consider the criteria in paragraph (k)(2).  Thus, 19 C.F.R. § 351.225(k)(2) (2013) provides:

> (2) When the above criteria {in 351.225(k)(1)} are not dispositive, the Secretary <u>will</u> further consider:
> (i) The physical characteristics of the product;
> (ii) The expectations of the ultimate purchasers;
> (iii) The ultimate use of the product;
> (iv) The channels or trade in which the product is sold; and

5

(v) The manner in which the product is advertised and displayed.

*Id*. (emphasis added).  Therefore, when Commerce initiates a formal scope inquiry, it is required to consider the (k)(2) criteria.

As noted above, Commerce issued a letter dated February 25, 2013, acknowledging Meridian's request that Commerce find its products outside the scope of the orders  and stating that, "[t]he issue of whether the product is included within the scope cannot be determined based solely upon the application.  For this reason, and in order to fully consider the comments received, we are initiating a scope inquiry pursuant to 19 CFR 351.225(e)."  Letter from Melissa G. Skinner, Director, AD/CVD Operations, Aluminum Extrusions the People's Republic of China: Initiation of Formal Scope Inquiry (February 25, 2013).  In response, Meridian submitted comments that addressed each of the (k)(2) criteria.  *See* Letter from Daniel Cannistra, Crowell & Moring LLP, to the Secretary of Commerce, Aluminum Extrusions from the People's Republic of China: Comment in Response to Formal Scope Inquiry Regarding Kitchen Appliance Door Handles at 9-16 (March 18, 2013).  In its final scope ruling issued on June 21, 2013, however, Commerce stated that "we find that the scope and prior rulings are dispositive as to whether the products at issue are subject merchandise," and further expressly declined to consider the (k)(2) factors as required by regulation, stating that, " it is unnecessary to consider the additional factors specified in 19 C.F.R. § 351.225(k)(2)."  Appliance Handles Scope Ruling at 12.  Commerce therefore confessed that it failed to consider the (k)(2) criteria that its own regulations and judicial decisions  required that it consider once it initiated a formal scope inquiry.  Accordingly, Commerce's determination that Meridian's products are within the scope of the orders was unlawful, was not based upon substantial evidence, and was not otherwise in accordance with the law.

B.    **Appliance Handles Fall Within the Scope Exclusion for Finished Goods Based on the Revised Test in Side Mount Valve Controls.**

Meridian's appliance handles should be excluded from the scope of the orders because they meet the finished goods exclusion to the orders.  Commerce's scope language excludes:

> …finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.   The scope also excludes finished goods containing aluminum extrusions that are entered unassembled in a "finished good kit."  A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product.

Antidumping Duty Order at 30,651.  Commerce's ruling on Side Mount Valve Controls ("SMVCs") examined this exclusion language when Commerce considered whether SMVCs imported as an unassembled kit to be installed on a larger structure, a fire truck, fell within the finished goods exclusion to the scope of the Orders.  *See Preliminary Scope Ruling on Side Mount Valve Controls*, A-570-967, C-570-968, dated Sep. 24, 2012, *aff'd*, *Final Scope Ruling on Side Mount Valve Controls*, A-570-967, C-570-968, dated Oct. 26, 2012 ("SMVC Scope Ruling").  In its SMVC Scope Ruling, Commerce determined that its previous analysis in determining whether a given product is a "finished good" or a "finished goods kit" "may lead to absurd results." *Id*. at 7.  Consequently, Commerce revised its analysis on the finished goods exclusion and established a new test that a product must satisfy to be considered a finished good and thereby be excluded from the scope of the orders.  According to the SMVC Scope Ruling, to be considered a finished good excluded from the scope of the Orders the product "must be ready

for installation and require no further finishing or fabrication." *Id*.  In the ruling, Commerce

disagreed with Petitioner's argument that SMVCs are not "final finished goods" because they are

components of a larger apparatus and are imported under an HTSUS subheading for "parts and

accessories" of larger systems.  *Id*.

Meridian's appliance handles clearly meet the requirements of this test and therefore

should be excluded from the scope of the orders.  Meridian's appliance handles are a packaged

combination of parts that contain, at the time of importation, all of the necessary components to

assemble a completed handle to be mounted to an oven, refrigerator, or freezer.  All of the

components are fully fabricated and do not require further cutting, punching, or other processing

prior to assembly and installation.  Accordingly, Meridian's appliance handles meet the revised

test for finished goods established in the SMVC Scope Ruling as they are "ready for installation

and require no further finishing or fabrication" and should therefore be excluded from the scope

of the orders.

The United States Court of International Trade summarized the evolution of Commerce's

methodology in determining which products qualify for the finished goods exclusion in *Meridian*

*Products, LLC v. United States*, Slip Op. 14-32 (March 26, 2014) (remanding first results of

remand of anti-dumping and countervailing duty orders on aluminum extrusions from the

People's Republic of China) ("*Meridian Products*").  It its opinion, the court outlined the revised

finished goods methodology as follows:

> The court notes that on remand Commerce appears to have taken a similar
> approach to interpreting the revised finished goods methodology as applied in the
> *Valves Ruling* and the *Auto Parts Remand*, in order to avoid cases where the
> previous approach may lead to an "absurd result" for products it determined were
> subassemblies.  Commerce ultimately concluded here on remand that the rulings
> demonstrate "a subassembly will be excluded if it contains, at the time of

importation, all of the parts necessary to assemble a final finished good."
Remand at 13. In that process, it referenced the *Valves Ruling*, where it reasoned
that requiring all parts needed to assemble a downstream product to be present for
it to qualify as a "finished good kit" may in some instances expand the scope of
the Orders, which are intended to cover aluminum extrusions. *See* Remand at 10-
12, citing *Valves Ruling* at 7, citing scope of the Orders. Commerce's specific
reference to the *Valves Ruling* drew attention to its revision of its "finished goods
kit" and "subassemblies" analyses and "the manner in which it determines if a
given product is a 'finished good' or 'finished goods kit.'" *Id.*, citing *Valves
Ruling* at 6-7. In the *Valves Ruling*, Commerce defined a subassembly as
"partially assembled merchandise" that is "designed to work with other parts to
form a larger structure or system". Commerce determined that the scope
language, which includes aluminum extrusion components that form
subassemblies "as imported as part of the finished goods kit", as well as the
language defining "finished goods kits" both indicated that subassemblies may be
excluded from the scope <u>if they enter as finished goods or finished goods kits and
require no further finishing or fabrication</u>. Commerce thus concluded that the fire
hose valve kit in question, for assembly into a fire truck after importation and
containing all the parts necessary to assemble a completed side mount valve and
requiring no further finishing or fabrication prior to being assembled, qualified as
a "finished goods kit" even without the fire truck accompanying the kit at import.
*Valves Ruling* at 7-8.

Commerce also referenced as support for its redetermination the *Auto Parts
Remand*, in which it applied the methodology of the *Valves Ruling* in determining
certain auto parts for heating/cooling systems of a car as subassemblies because
they were "inherently part of a larger whole." It found that the auto parts
qualified as finished goods because they were both <u>ready for installation with no
additional fabrication or finishing required</u>, and that they were <u>ready for assembly
without any additional hardware or parts</u> even considering that they were
imported without a car. *See* Remand at 11-12, citing *Auto Parts Remand* at 10.

*Meridian Products* at 13-14. In the present case, Commerce never even attempted to apply its

revised finished goods methodology to Meridian's appliance handles. Had Commerce applied

its revised finished goods methodology, it would have determined that Meridian's appliance

handles qualify for the finished goods exclusion. The appliance handles are "partially assembled

merchandise" that are "designed to work with other parts to form a larger structure." They

contain all the components for assembly, are ready for installation upon importation, and require

no further finishing or fabrication. Further, in the language of this court in *Meridian Products*,

Meridian's appliance handles are "<u>ready for installation with no additional fabrication or</u>

9

<u>finishing required.</u>" Accordingly, Meridian's appliance handles meet the requirements for

finished goods using Commerce's revised finished goods methodology and should be excluded

from the scope of the orders.

      C.      **Commerce's Analysis in its Appliance Handles Scope Ruling is Deeply Flawed Because it Contains an Aluminum Content Limitation**

In its Appliance Handles Scope Ruling, Commerce did not apply the SMVC revised test

for finished goods, and claimed that goods that "consist entirely of aluminum extrusions" cannot

qualify as finished goods excluded from the scope of the orders.  Commerce stated that,

> …to consider a product which consists only of aluminum extrusions as a finished goods kit or final, finished good would mean that the exception to the scope of the Orders would swallow the scope, because any aluminum extrusion product, as long as it can be identified by end use, could be considered a finished product. This is contrary to the scope itself, which covers aluminum extrusions. Meridian's products are not analogous to windows with glass, or picture frames with glass and backing material, because they consist only of aluminum extrusions. Thus, they are akin to window frames without glass, which are expressly covered by the scope.

Appliance Handles Scope Ruling at 14.  This limitation, that finished goods that consist only of

aluminum extrusions may not be excluded from the scope of the order, is unsupported by the

language of the scope in the Orders or prior rulings, and Commerce provides no evidence to

support its determination that the aluminum extrusion content of an article has a decisive bearing

on whether a product is a finished good.  This limitation erroneously forecloses Commerce's

application of the finished goods analysis established in the SMVC Scope Ruling to Meridian's

products.

1.      **The Language of the Orders Does Not Support an Aluminum Content Limitation**

Commerce's aluminum content limitation is wholly unsupported by the language of the aluminum extrusion Orders.  It is well established that Commerce must first examine the language of the final order when conducting a scope inquiry.  *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1302 (Fed. Cir. July 18, 2013) ("*Mid Continent*).  As the Court of Appeals for the Federal Circuit has made clear, the scope language itself is the cornerstone in any scope determination:

> [I]t is the language of Commerce's final order that defines the scope of the order albeit "with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order."  While the petition, factual findings, legal conclusions, and preliminary orders can aid in the analysis, they cannot substitute for the language of the order itself, which remains the 'cornerstone' in any scope determination."

*Walgreen Co.*at 1357 (emphasis added) (quoting *Duferco Steel v. United States*, 296 F.3d 1087, 1097 (Fed. Cir. 2002)).

Further, as this court explained in *Legacy Classic Furniture, Inc. v. United States*, 867 F. Supp. 2d 1321 (Ct. Int'l Trade 2012), the specific exclusion language in an antidumping or countervailing duty order "trumps" more general language in the order.  The court first explained, with reference to past decisions of the Court of Appeals for the Federal Circuit, that "scope inclusions are written in general terms and then specific exclusions are carved out from the general terms." *Id*. at 1329.  The court held that in these circumstances the "specific should trump the general" since "[t]he purpose of the explicit exclusions is to narrow the expanse of the general scope," explaining as follows:

> Because the scope language of an order starts with general inclusions and then carves out specific exclusions, when a product is generally included in a residual provision but yet specifically excluded from the scope, the specific should trump the general.  The purpose of the explicit exclusions is to narrow the expanse of the general scope.  Unequivocal exclusions are not loopholes; they are argued for and intentionally omitted from the scope.  *Wheatland Tube*, 161 F.3d at 1371.  To "allow Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation" would "frustrate the purpose of the antidumping laws."

> *Id*. at 1330.

Following this decision Commerce stated that it follows this general principle that the narrower exclusion language in its scope orders prevails over the broader language.  Thus, Commerce stated that,

> With regard to the Court's instruction that the Department 'explain its policy where general language in the scope section of an antidumping duty order can be read to include the product at issue but other language in the scope section specifically excludes the product at issue,' we agree as a general matter that the scope exclusions are written to exclude merchandise that would otherwise be considered subject merchandise…the Department follows the general principle that the provisions with more specific language, whether used to define the subject merchandise or to define an exclusion from the subject merchandise, control the Department's scope clarification.

Final Results of Second Redetermination Pursuant to Court Order, *Legacy Classic Furniture v. United States*, No. 10-00352 at 5 (January 4, 2013) (quoting *Legacy Classic Furniture v. United States*, 867 F. Supp. 2d 1321 (Ct. Int'l Trade 2012).

As stated above, the scope language in the aluminum extrusion Orders establishes the finished goods exclusion as follows:

> The scope … excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.  The scope also excludes finished goods containing aluminum extrusions that are entered

> unassembled in a "finished good kit."  A finished goods kit is understood to mean a packaged combination of parts that contains, at the time of importation, all of the necessary parts to fully assemble a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled "as is" into a finished product. An imported product will not be considered a "finished goods kit" and therefore excluded from the scope of the investigation merely by including fasteners such as screws, bolts, *etc.* in the packaging with an aluminum extrusion product.

Antidumping Duty Order at 30,651.  This language, which must serve as the "cornerstone" of Commerce's determination regarding Meridian's appliance handles contains no aluminum content requirement that would bar a product from the finished goods exclusion. Moreover, the exclusion language is more specific than the general language used to define the subject merchandise that Commerce relied upon in the Appliance Handles Scope Ruling. As such, the more specific language should control and Commerce should apply the finished goods test regardless of the aluminum content of the product.  Put another way, since the finished goods exceptions do not include any minimum aluminum content requirement, the presumption must be that there is no such requirement and that Commerce's assertion to the contrary is wrong.

### 2. Published Guidance Prior to the Order Does Not Support An Aluminum Content Limitation

In *Mid Continent* the Court of Appeals explained the type of analysis that Commerce must make once there is a presumption on whether merchandise in included in an order based on the language in the order. According to *Mid Continent*, this presumption can only be overcome through the identification of "published guidance issued prior to the date of the original antidumping order … that provides a basis for interpreting the order contrary to its literal language." *Mid Continent* at 1304.  Commerce's determination completely fails on this count, as it is foreclosed by a pre-order scope ruling that was directly on point.

A minimum aluminum content requirement for finished goods—the very requirement that Commerce asserts in the Appliance Handles Scope Ruling at issue—was considered and rejected in a pre-order scope ruling.  During the original investigation, five domestic manufacturers of aluminum fences and gates submitted comments arguing for the inclusion of certain aluminum extrusions, packaged as kits or fully assembled finished products.  *Aluminum Extrusions From the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value, and Preliminary Determination of Targeted Dumping*, 75 FR 69403 (November 12, 2010) and *Preliminary Determinations: Comments on the Scope of the Investigations*, dated October 27, 2010 at Comment 3, unchanged in *Aluminum Extrusions from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 76 FR 18524 (April 4, 2011), and accompanying Issues and Decision Memorandum.  These domestic manufacturers argued that kits and fully assembled finished products should be included in the scope of the orders when they were composed of products with at least 70 to 75 percent aluminum extrusions by weight.  The manufacturers contended that excluding such products from the scope would harm certain domestic manufacturers of aluminum fences and gates.  Further, the manufacturers argued that the proposed criteria, *i.e.*, percentage of the kit by weight, would be more useful than listing specific products to be excluded, as there are many types of products with a high content of extruded aluminum.

Petitioner opposed the proposed modification, arguing that the Petition was not intended to cover imports of fully-assembled finished aluminum fencing systems or fully finished aluminum fencing systems in kit form.  Commerce agreed with Petitioner that kits and finished products are excluded from the scope of the Orders, regardless of the percentage content of the aluminum extrusions.  Consistent with this result, finished merchandise and kits containing

aluminum extrusions were specifically excluded from the scope of the Orders, with no specification as to the percentage content of aluminum extrusions. Consequently, Commerce determined that finished products and unassembled kits that contain all the components for the finished product, regardless of the percentage content of aluminum extrusions by weight, are excluded from the scope of the orders.

Despite the clear rejection of an aluminum content requirement in a pre-order scope determination, Commerce applied exactly that requirement when it found that Meridian's appliance handles do not meet the finished goods exclusion on the ground that they are exclusively made from aluminum extrusions. This inconsistency and resulting due process concerns are precisely those raised by the Court in *Mid Continent*:

> …Commerce's problems are largely self-inflicted, because in the past Commerce has given low priority to an approach that should receive the highest priority from any administrative agency— providing coherent and consistent guidance to regulated parties.

*Mid Continent* at 1305-1306. In its determination, Commerce not only ignored its pre-order scope ruling and failed to give it the weight mandated by *Mid Continent*, it effectively reversed its pre-order determination as applied to Meridian's appliance handles.

Furthermore, Commerce selectively relied on *ad hoc* determinations in direct conflict with the guidance provided in *Mid Continent*, citing to three prior scope rulings as support for the aluminum content limitation—Geodesic Domes, Cutting & Marking Edges, and Trim Kits. Appliance Handles Scope Ruling at 13–14 (citing *Final Scope Ruling on J.A. Hancock Co., Inc.'s Geodesic Structures*, A-570-967, C-570-968, dated July 17, 2012 ("Geodesic Domes Ruling"); *Final Scope Ruling on Cutting and Marking Edges*, A-570-967, C-570-968, dated Nov. 13, 2012; *Final Scope Ruling on Refrigerator/Freezer Trim Kits*, A-570-967, C-570-968, dated Dec. 17, 2012). These *ad hoc* determinations issued following the date of the original order

cannot operate to effectively revoke the pre-order scope ruling noted above, which directly

contradicts the proposition for which the determinations are cited.[1]

       3.      **Commerce's Assertion of an Aluminum Content Limitation on the Finished Goods Exclusion Otherwise Lacks Support**

The SMVC Scope Ruling establishing the revised analysis for the finished goods

exclusion is silent with respect to aluminum content.  The SMVC Scope Ruling gave no

indication that the revised analysis was in any way limited to products containing a certain

threshold level of aluminum extrusions.  Moreover, Commerce's subsequent determinations

regarding Drapery Rails Kits and Auto Parts, which apply this revised finished goods test,

likewise fail to remark on aluminum content or establish an aluminum content test.  *See* Final

Results of Redetermination Pursuant to Court Remand, *Rowley Co. v. United States*, No. 12-

00055 (Ct. Int'l Trade Feb. 28, 2013) ("Drapery Rail Kits Redetermination"); Final Results of

Redetermination Pursuant to Court Remand, *Valeo, Inc. v. United States*, No. 12-00381 at 10

(Ct. Int'l Trade Feb. 13, 2013) ("Auto Parts Redetermination").

---

[1] In any event, the three cited determinations completely fail to support Commerce's final determination in the present case, as none provide more than conclusory statements in support of Commerce's aluminum content requirement.  They are merely in-scope determinations for products comprised primarily or entirely of aluminum extrusions, and the conclusions contained therein are as empty and devoid of legal analysis as those in the present scope ruling.  Furthermore, two of the three cases (*Meridian v. United States*, Court No. 13-00018 (Ct. Int'l Trade filed Jan. 10, 2013) (Trim Kits), and *Plasticoid Manufacturing Inc. v. United States*, Court No. 12-00407 (Ct. Int'l Trade filed Dec. 11, 2012) (Cutting & Marking Edges)) are before this Court on precisely the same issues raised by Meridian and contest the precise legal point for which they are being cited.  Notably, Trim Kits has been remanded twice back to Commerce.  The third case, Geodesic Domes, does not support the conclusion that a product consisting entirely of an aluminum extrusion cannot be considered a finished good.  Instead, Commerce applied an "exception to the exception" test in Geodesic Domes and found that the inclusion of fasteners in the product voided the finished good exclusion.  Geodesic Domes Ruling at 7 ("Since the geodesic structure kits consist solely of extruded aluminum tubes and fasteners, the exception applies.").  Plaintiff will not address the merits of Commerce's "exception to the exception test" other than to note that it improperly excludes products from the finished goods exclusion simply because the product includes fasteners, which is contrary to a plain reading of the scope language in the Orders.

Furthermore, in its rulings on solar mounts, banner stands and fence sections, Commerce used identical language to summarize its rejection of an aluminum content requirement for finished goods:

> During the investigations, five domestic manufacturers of aluminum fences and gates submitted comments arguing for the inclusion of certain aluminum extrusions, packaged as kits or fully assembled finished products.
>
> The producers argued that kits and fully assembled finished products composed of at least 70 to 75 percent aluminum extrusions by weight should be included in the scope of the proceedings.  These producers contended that such items are simply aluminum extrusions that have been boxed or assembled, with a few minor parts added, and excluding these products from the scope would harm certain domestic manufacturers of aluminum fences and gates.  Further, these five manufacturers argued that the proposed criteria, i.e., percentage of the kit by weight, would be more useful than listing specific products to be excluded, as there are many types of products with a high content of extruded aluminum.
>
> Petitioner opposed the proposed modification, arguing that although the Petition is not intended to harm domestic producers of aluminum fences and gates, the Petition is also not intended to cover imports of fully-assembled finished aluminum fencing systems or fully finished aluminum fencing systems in kit form.
>
> The Department agreed with Petitioner that <u>kits and finished products are excluded from the scope,</u> <u>regardless of the percentage content of aluminum extrusions</u>.  Finished merchandise and unassembled kits containing aluminum extrusions are specifically excluded from the scope, <u>with no specification as to the percentage content of aluminum extrusions</u>.  The Department determined that finished product, <u>regardless of the percentage content of aluminum extrusions by weight</u>, are excluded from the scope of these investigations.

*See Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems* at 5 (Oct. 31, 2012) (emphasis added) (citing *Preliminary Determinations: Comments on the Scope of the Investigations*, dated Oct. 27, 2010); *see also Final Scope Ruling on Banner Stands and Back Wall Kits* at 5 (Oct. 31, 2012) (citing *Preliminary Determinations: Comments on the Scope of the*

*Investigations*, dated Oct. 27, 2010); *Final Scope Ruling on American Fence Manufacturing Company LLC's Fence Sections, Posts and Gates* at 5–6 (Dec. 2, 2011) ("Fence Sections Ruling") (citing *Preliminary Determinations: Comments on the Scope of the Investigations*, dated Oct. 27, 2010).

The Department could not have been clearer in each of these three decisions: the finished goods exclusion does <u>not</u> depend on aluminum content, and there is no cut-off point at which a product has too much aluminum extrusion content to qualify as a finished good. Thus, when Commerce says that products containing only aluminum extrusions and fasteners cannot be finished goods, it is ignoring its own unambiguous and persistent rejection of the use of aluminum extrusion content as a factor in such determinations.

Finally, the conclusion that the Meridian appliance handles are not covered by the scope of the Orders is supported by Commerce's Auto Parts Redetermination reversing its determination in its final scope ruling on Auto Parts that the products fell within the literal language of the scope order. Auto Parts Redetermination at 10. In its October 31, 2012 final scope ruling, Commerce conclude that the Auto Parts were "aluminum extrusions that have undergone extensive fabrication" and were therefore "specifically covered" by the scope of the orders. *Final Scope Ruling on Valeo's Automotive Heating and Cooling Systems*, A-570-967, C-570-968, dated Oct. 31, 2012 ("Auto Parts Scope Ruling") at 7. However, in the Auto Parts Redetermination, Commerce applied the revised test established in SMVC and found that the parts constitute "finished goods" that are inherently part of a larger whole and were thereby excluded from the scope of the orders. Commerce determined that these parts were excluded from the order using the analysis from the SMVC ruling even though the parts consisted only of fabricated aluminum extrusions. Accordingly, Commerce's assertion that Meridian's products

cannot qualify as finished goods excluded from the scope of the orders because they are goods that "consist entirely of aluminum extrusions" and its refusal to apply the new finished goods test established in the SMVC Scope Ruling is also fundamentally inconsistent with its remand decision in the Auto Parts Redetermination.

## CONCLUSION

For all of the reasons set forth above, Commerce's scope ruling on appliance handles is not a reasonable interpretation of the scope language in the Orders ,  is not supported by substantial evidence, and is contrary to law.

Respectfully submitted,

/s/ Daniel Cannistra
_____
Daniel Cannistra

*Counsel to* Meridian Products LLC

Dated:  May 12, 2014

# APPENDIX A

| Date | Company | Product |
|------|---------|---------|
| Apr 07, 2014 | Yuanda | Curtain Wall Units |
| Apr 07, 2014 | Gallery Assemblies | Wind Turbines |
| Dec 05, 2013 | Traffic Brick | Event Decor Parts and Kits |
| Nov 22, 2013 | Kam Kiu | Subparts for Metal Bushings |
| Sep 12, 2013 | Law St. | Disappearing Door Screens |
| Sep 05, 2013 | Port-A-Cool | Louver Assemblies |
| Jun 21, 2013 | Meridian | Kitchen Door Handles |
| Apr 19, 2013 | 5 Diamond | Flag Pole Sets |
| Mar 20, 2013 | Asia Sourcing Corporation ("ASC") | Ladders and Brackets |
| Mar 14, 2013 | Tesla | Curtain Walls with Non-PRC Extrusions |
| Dec 17, 2012 | Meridian Products LLC | Refrigerator/Freezer Trim Kits |
| Nov 30, 2012 | Northern California Glass Management Association | Curtain Wall Units |
| Nov 19, 2012 | UQM Technologies Inc. | Assembled Motor Cases |
| Nov 14, 2012 | Signtex Lighting, Inc. | Aluminum Mounting Plates |
| Nov 13, 2012 | Plasticoid Manufacturing Inc. | Cutting and Marking Straight Edges |
| Oct 31, 2012 | Clenergy (Xiamen) Technology Co. Ltd. | Solar Panel Mounting Systems |
| Oct 31, 2012 | Valeo Group | Automotive Heating and Cooling Systems |
| Oct 26, 2012 | Innovative Controls Inc. | Side Mount Valve Controls |
| Oct 17, 2012 | A.O. Smith Corporation | Aluminum Anodes for Water Heaters |
| Sep 06, 2012 | Sinobec Resources LLS | Aluminum Rails for Showers and Carpets |
| Aug 17, 2012 | Construction Specialties Inc. | Solarmotion Controllable Sunshades |
| Aug 15, 2012 | Ameristar Fence Products | Kitted Fences |
| Jul 17, 2012 | J.A. Hancock Co | Geodesic Structures |
| Jul 13, 2012 | Electolux | Fin Evaporator Systems |
| Jul 06, 2012 | UQM Technologies, Inc. | Motor Cases |

| D a t e | C o m p a n y | P r o d u c t |
|---|---|---|
| Mar 28, 2012 | IDEX Health & Sciences, LLC | Precision Machine Parts |
| Feb 03, 2012 | The Rowley Company | Drapery Rail Kits |
| Dec 13, 2011 | Origin Point Brands, LLC | Fence Panels, Posts and Gates |
| Dec 13, 2011 | Ameristar Fence Products | Aluminum Fence and Post Parts |
| Dec 09, 2011 | IAP Enclosure Systems, LLC | Window Kits |
| Dec 02, 2011 | American Fence Manufacturing Company LLC | Fence Sections, Posts and Gates |
| Nov 09, 2011 | Moss Holding Company | EZ Fabric Wall Systems |
| Nov 07, 2011 | Sapa Extrusions, Inc | Shower Door Kits |
| Oct 31, 2011 | Peak Products America Inc | Certain Modular Aluminum Railing Systems |
| Oct 31, 2011 | Rubbermaid Commercial Products LLC | Certain Decorative Waste Containers |
| Oct 25, 2011 | Rubbermaid Commercial Products LLC | Certain Cleaning System Components |
| Oct 19, 2011 | Skyline Displays Inc | Banner Stands and Back Wall Kits |
| Oct 14, 2011 | Tri Vantage | Certain Retractable Awning Mechanisms |